# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**IRA LEE MCQUEEN,**

                        Plaintiff,

Vs.                                Case No: 3:10 cv 85

**HARRY R. MCNESBY**, Sheriff
of Escambia County, Florida; Deputy Sgt.
**SHEDRICK JOHNSON**, #127;
Deputy Sheriff **MICKEY A. O'REILLY,
JR**., #200; Deputy Sheriff **JIMMIE TATUM**,
#348, and other yet to be identified
Escambia County Deputy Sheriffs.

                        Defendants.

_____/

## COMPLAINT

Plaintiff, IRA LEE MCQUEEN, by and through his undersigned counsel, sues Defendants, HARRY R. MCNESBY, Sheriff of Escambia County in his official capacity, and Deputy Sergeant SHEDRICK JOHNSON, Deputy Sheriff MICKEY A. O'REILLY, JR., and Deputy Sheriff JIMMIE TATUM each in both their individual and official capacities, and alleges as follows:

## PARTIES

1. This is a civil action seeking damages against Defendants for committing acts, under color of law, which deprived Plaintiff of rights secured under the Constitution and laws of the United States and the

State of Florida; for failing to have constitutionally sufficient policies and procedures which resulted in one or more of the Defendants using excessive force against the Plaintiff on October 28th, 2008 in Escambia County, Florida. The court has jurisdiction of this action under 42 U.S.C. § 1983 and 28 U.S.C. § 1343.

2. The court also has jurisdiction under 28 U.S.C. § 1331 and the laws of the State of Florida.

3. All of the primary events giving rise to this cause of action occurred in Escambia County, Florida.

4. This is an action in which the Plaintiff seeks damages in excess of $15,000.00, exclusive of interest, costs and attorney's fees.

5. Attorney's fees and costs in all civil rights claims are authorized in accordance with 42 U.S.C. § 1988.

6. The Plaintiff is Ira Lee McQueen, (hereinafter "Plaintiff") who is a resident and citizen of Escambia County, Florida and the United States of America. The Plaintiff is a sworn law State of Florida law enforcement officer and was acting as a law enforcement officer at all times relevant to this complaint. The Plaintiff is of African-American descent.

7.   Defendant, Harry R. McNesby (hereinafter "McNesby") was Sheriff of Escambia County, Florida and a resident of Escambia County, Florida at all times relevant to this complaint.  McNesby had the responsibility to promulgate and publish policies and procedures to his Deputy Sheriffs to regulate and control their conduct within the boundaries and restrictions of the Constitution of the United States. McNesby is sued in his official capacity.

8.   Defendant, Shedrick Johnson (hereinafter "Johnson") was a Deputy Sheriff Sergeant of the Escambia County Sheriff's Office at all times relevant to this complaint.   Johnson was one of a number of officers and supervisors who were involved in the application of force against the Plaintiff.   Johnson is sued in his individual and official capacities.

9.   Defendant, Mickey A. O'Reilly, Jr. (hereinafter "O'Reilly") was a Deputy Sheriff of the Escambia County Sheriff's Office at all times relevant to this complaint.  O'Reilly was one of a number of officers and supervisors who were involved in the application of force against the Plaintiff.  O'Reilly is sued in his individual and official capacities.

3

10.   Defendant, Jimmie Tatum (hereinafter "Tatum") was a Deputy Sheriff of the Escambia County Sheriff's Office at all times relevant to this complaint.  Tatum was one of a number of officers and supervisors who were involved in the application of force against the Plaintiff.  In addition, Tatum was a K-9 officer who was in charge of and had control over a canine known as "Gero."  Tatum is sued in his individual and official capacities.

## FACTS

11.   On October 28th, 2008 the Plaintiff was on duty in Pensacola, Escambia County, Florida as a Special Agent for the State of Florida Division of Alcohol, Beverage and Tobacco.  The Plaintiff was working undercover to locate and identify individuals who were violating Florida State statutes related to the sale of alcoholic beverages.  All of the following facts occurred on October 28th, 2008.

12.  The Plaintiff was working with another Special Agent by the name of Tammy Richards.

13.  The Plaintiff and Richards were investigating the sale of alcoholic beverages at a retail business by the name of "The Liquor Cabinet" (herein after "business") located at 1600 South Highway 29, Cantonment, Escambia County, Florida.

4

14.   The Plaintiff's investigation determined that the clerk on duty at the business had made a sale of alcoholic beverages to a person who was underage which constituted a violation of Florida State statutes.

15.   The Plaintiff entered the business, contacted the clerk, and identified himself as a Special Agent with the State of Florida Division of Alcohol, Beverage and Tobacco.   The Plaintiff, after identifying himself to the clerk with his State of Florida identification, placed the identification back in his pocket.

16.   Subsequently, during his investigation, the Plaintiff asked the business clerk if he was armed.   Upon receiving a positive response, the Plaintiff disarmed the clerk and secured the handgun that had been located on the clerk.

17.  A customer in the business observed the Plaintiff disarming the clerk.   The customer did not observe the Plaintiff point the handgun at either the clerk or herself.  As the customer was departing the business, the clerk told the customer that he was sorry.

18.   The customer then went to a phone and reported her observations on a 911 call that was relayed to the Escambia County Sheriff's Office.  The customer advised the Escambia County Sheriff's

5

Office that a person, who might be a friend of the clerk, was inside the business with a handgun.   The customer also advised the Sheriff's Office that she was not sure what, if anything, was happening inside the business.

19.  The personnel of the Escambia County Sheriff's Office who took the information from the customer then dispatched units to the business on possible robbery in progress.   The Sheriff's Office dispatcher did not provide the information to the responding officers that the person with the handgun might be a friend of the clerk.  More than fifteen (15) Deputy Sheriffs of the Escambia County Sheriff's Office responded to this call.

20.  Unaware that a 911 call had been made to the Escambia County Sheriff's Office, the Plaintiff then called the Sheriff's Office. Upon making contact with the Sheriff's Office, the Plaintiff identified himself as a Special Agent for the State of Florida and ran a wanted check on the clerk and the firearm that was taken from the clerk.  The Sheriff's Office personnel failed to advise the responding officers of this telephone contact by the Plaintiff.

21.  The Plaintiff became aware of the arrival of a large number of Escambia County Sheriff's Office patrol units at the business.  The

6

Plaintiff also became aware that officers in these units were pointing their firearms in his direction within the business.

22.  The Plaintiff who was still on the phone with personnel of the Escambia County Sheriff's Office, reported these observations to the personnel on the phone and asked them to notify the officers outside the business that he was a Special Agent for the State of Florida.

23.  As the Plaintiff was talking on the telephone with Escambia County Sheriff's Officer personnel, he became aware that a number of the officers outside the business were screaming and yelling at him to keep his hands in view and to walk out of the business.

24.  The Escambia County Sheriff's Office employee on the telephone with the Plaintiff instructed the Plaintiff to walk outside and make contact with the officers.  This Sheriff's Office employee either failed to notify the officers outside the business or the officers ignored the information that the Plaintiff was a Special Agent and a law enforcement officer.

25.  The Plaintiff complied with the telephone directions and the officers' demands while at the same time shouting to them that he was a Special Agent and a law enforcement officer.

26.  The Plaintiff walked out of the business with his hands up holding nothing but the telephone that was still connected on a call to the Escambia County Sheriff's Office.

27.  The Plaintiff complied with the officers' commands and continued to tell them that he was a Special Agent and a law enforcement officer.

28.  The Plaintiff, upon coming out of the building and going to the ground as instructed by the Deputy Sheriffs, was tasered with an electronic stun gun multiple times by Johnson and O'Reilly.

29.  The Plaintiff was lying on the ground during the taser sequence and continued to tell the officers that he was a Special Agent and a law enforcement officer.

30.  The Plaintiff, although not required to legally comply with the officers' commands, did so and offered no resistance while lying on the ground during the time that he was being tasered by Johnson and O'Reilly.

31.  The responding Deputy Sheriffs then jumped on the Plaintiff, landing on the Plaintiff's back with their knees and then repeatedly slamming the Plaintiff's head into the concrete sidewalk where he was laying.

32.   Tatum released his K-9 "Gero" which attacked the Plaintiff and inflicted wounds on the Plaintiff's legs as he lay on the ground completely restrained by the Deputy Sheriffs who had jumped on his back.

33.   During the tasering sequence, the attack by the Deputy Sheriffs and the K-9 attack, the Plaintiff's bladder released.   The Plaintiff attempted to control his bladder and protect his groin area from the K-9 by covering his groin area with one of his hands.

34.   After Tatum pulled his K-9 off the Plaintiff, numerous officers of the Escambia County Sheriff's Office to include Johnson and O'Reilly remained on top of the Plaintiff, slammed his head into the ground, and forcibly handcuffed him as the Plaintiff continued to identify himself.

35.   Officers of the Escambia County Sheriff's Office then located the Plaintiff's identification as a Special Agent that was located in the Plaintiff's pocket.   Despite the fact that they had the Plaintiff's identification, they continued to leave the Plaintiff face down on the ground lying in his urine, injured from the attack by the Deputy Sheriffs and with his arms handcuffed behind his back for a period of time.

36.  The Plaintiff was eventually released by one of the officers of the Escambia County Sheriff's Office after which he was transported to Sacred Heart Hospital for treatment of the injuries that had been inflicted by officers of the Escambia County Sheriff's Office and the K-9 "Gero.".

37.  The Plaintiff was harassed and subjected to ridicule by officers of the Escambia County Sheriff's Office both at the business and at the hospital following his release from custody at the business.

38.  The response by officers of the Escambia County Sheriff's Office directed at the Plaintiff was racially motivated and tainted due to the Plaintiff's race and the manner in which he was dressed.

**COUNT I**
**(Civil Rights Claim – Fourth Amendment)**

39.  The Plaintiff incorporates paragraphs one through thirty-eight (1-38) above.

40.  The Defendants Johnson, O'Reilly and Tatum acting under color of law and their authority as Deputy Sheriffs of Escambia County, Florida applied excessive and unconstitutional force against the Plaintiff through multiple applications of an electronic stun gun and the un-necessary deployment of a police K-9.

41.   The excessive force applied to the Plaintiff by the above Defendants caused physical and emotional injuries to the Plaintiff.

42.   The Plaintiff, although complying with the demands of the above Defendants and other officers of the Escambia County Sheriff's Office, was the victim of excessive and unnecessary force.

43.   The Plaintiff was deprived of his right to be secure in his person against unreasonable seizure of his person, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States.

44.   As a result of the Defendants' actions committed against him, the Plaintiff has suffered physical and emotional injuries to include embarrassment, humiliation, fear, anxiety and damage to his reputation.

45.   The acts of the above Defendants Johnson, O'Reilly and Tatum were intentional, wanton, malicious, and oppressive, thus entitling the Plaintiff to an award of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against the Defendants Johnson, O'Reilly, Tatum, and other unnamed Escambia County Deputy Sheriffs for compensatory damages together with interest plus attorney's fees and costs and further demands judgment

against Johnson, O'Reilly and Tatum for punitive damages, together with attorney's fees plus the costs of this action and such other relief as the court deems just and equitable.

## COUNT II
### (Civil Rights Claim –Official Capacity)
### (K-9 Policy)

46.   The Plaintiff incorporates paragraphs one through thirty-eight (1-38) above.

47.   Prior to the incident involving the Plaintiff, the Defendant McNesby was made aware of problems involving the use and deployment of agency K-9's by his Deputies that resulted in excessive force being applied to and injury to citizens of Escambia County, Florida.

48.   McNesby took no remedial actions to formulate policy or institute training that would prevent excessive force from being applied to citizens of Escambia County, Florida to include the Plaintiff.

49.   McNesby failed to institute a policy of documentation and supervision concerning the use of K-9's that would have identified problems with the use of agency K-9's and prevented excessive force being used against citizens of Escambia County, Florida to include the Plaintiff.

50.   Acting under color of law and pursuant to official policy, practice or custom, McNesby intentionally, knowingly and recklessly failed to supervise and control on a continuing basis the Defendant Tatum and his K-9 "Gero" thus allowing the use of unreasonable and excessive force before, during, or after the making of an arrest.

51.   McNesby knew or should have known that, had he exercised his duties to supervise and control the Deputy Sheriffs assigned K-9's  including the Defendant Tatum, the excessive force applied to the Plaintiff was about to be or likely to be committed.

52.   McNesby could have by the exercise of reasonable diligence prevented the excessive use of force against the Plaintiff but intentionally, knowingly, or recklessly failed or refused to do so.

53.  As a result of McNesby's actions, the Plaintiff has suffered physical and emotional injuries to include embarrassment, humiliation, fear, anxiety and damage to his reputation as a result of the acts committed against him by the Defendants.

**WHEREFORE**, Plaintiff demands judgment against the Defendant McNesby in his official capacity for compensatory damages together with interest plus attorney's fees and costs, and such other relief as the court deems just and equitable.

**COUNT III**
**(Civil Rights Claim –Official Capacity)**
**(Taser Policy)**

54.   The Plaintiff incorporates paragraphs one through thirty-eight (1-38) above.

55.   Prior to the incident involving the Plaintiff, the Defendant McNesby was made aware of problems involving the use and deployment of electronic stun guns by his Deputies that resulted in excessive force being applied to and injury to citizens of Escambia County, Florida.

56.   McNesby took no remedial actions to formulate policy or institute training on electronic stun guns that would prevent excessive force from being applied to citizens of Escambia County, Florida to include the Plaintiff.

57.   McNesby failed to institute a policy of documentation and supervision concerning the use of electronic stun guns that would have identified problems with the use of agency electronic stun guns and prevented the use of excessive force against citizens to include the Plaintiff.

58.   Acting under color of law and pursuant to official policy, practice or custom, McNesby intentionally, knowingly and recklessly

failed to supervise and control on a continuing basis the Defendants Johnson and O'Reilly so as to cause them to refrain from using unreasonable and excessive force before, during, or after the making of an arrest.

59. McNesby knew or should have known that had he exercised his duties to supervise and control the Deputy Sheriffs assigned electronic stun guns including the Defendants Johnson and O'Reilly, the excessive force applied to the Plaintiff was about to be or likely to be committed.

60. McNesby could have, by the exercise of reasonable diligence, prevented the excessive use of force against the Plaintiff but intentionally, knowingly, or recklessly failed or refused to do so.

61. As a result of McNesby's actions, the Plaintiff has suffered physical and emotional injuries to include embarrassment, humiliation, fear, anxiety and damage to his reputation as a result of the acts committed against him by the Defendants.

**WHEREFORE**, Plaintiff demands judgment against the Defendant McNesby in his official capacity for compensatory damages together with interest plus attorney's fees and costs, and such other relief as the court deems just and equitable.

## COUNT IV
### (Civil Rights Claim –Official Capacity)
### (Recognition of undercover/off duty officer Policy)

62.   The Plaintiff incorporates paragraphs one through thirty-eight (1-38) above.

63.   Prior to the incident involving the Plaintiff, the Defendant McNesby was made aware of problems involving the identification of undercover, plain clothes, and off-duty officers that are armed pursuant to federal and state law and who may be encountered by members of his agency.

64.   McNesby knew or should have known of several high profile national cases in which undercover, plain clothes or off-duty officers were injured or killed by other agency personnel who failed to recognize and identify the officers as sworn law enforcement officers.

65.   McNesby knew or should have known that members of more than ten (10) federal, state, county, or local agencies reside and work within Escambia County, Florida.

66.   McNesby took no remedial actions to formulate policy or institute training on identifying or recognizing off-duty, plain clothes or undercover officers that would prevent excessive force from being applied to these off-duty, plain clothes or undercover officers by his

Deputy Sheriffs in the event that his personnel encountered these off-duty, plain clothes or undercover officers.

67.  The Plaintiff was on duty in plain clothes at the time he was confronted by Johnson, O'Reilly and more than ten (10) other Escambia County Deputy Sheriffs.

68.  Acting under color of law and pursuant to official policy, practice or custom, McNesby intentionally, knowingly and recklessly failed to formulate and institute policies and procedures that would have resulted in the supervision and control on a continuing basis, of the Defendants Johnson and O'Reilly in recognizing undercover, plain clothes, and off-duty law enforcement officers and eliminating the probability of excessive force before, during, or after the identification of undercover, plain clothes, or off-duty law enforcement officers.

69.  McNesby knew or should have known that had he exercised his duties to supervise and control the Deputy Sheriffs under him including the Defendants Johnson and O'Reilly, the excessive force applied to the Plaintiff was about to be or likely to be committed.

70.    McNesby could have, by the exercise of reasonable diligence, prevented the excessive use of force against the Plaintiff but intentionally, knowingly, or recklessly failed or refused to do so.

71.  As a result of McNesby's actions, the Plaintiff has suffered physical and emotional injuries to include embarrassment, humiliation, fear, anxiety and damage to his reputation due to the acts committed against him by the Defendants.

**WHEREFORE**, Plaintiff demands judgment against the Defendant McNesby in his official capacity for compensatory damages together with interest plus attorney's fees and costs, and such other relief as the court deems just and equitable.

## COUNT V
(False Imprisonment – State Law Claim)

72.   The Plaintiff incorporates paragraphs one through thirty-eight (1-38) above.

73.   As a result of the acts of Johnson, O'Reilly, Tatum and other unnamed Escambia County Deputy Sheriffs, the Plaintiff was unlawfully detained and arrested without probable cause, without his consent and against his will in front of the business.

74.  The acts of the Defendants Johnson, O'Reilly, Tatum and other unnamed Escambia County Deputy Sheriffs were unreasonable

and unwarranted under the circumstances described in paragraphs one through thirty-eight (1-38).

75.   As a result of the Defendants' actions committed against him, the Plaintiff has suffered physical and emotional injuries to include embarrassment, humiliation, fear, anxiety and damage to his reputation.

**WHEREFORE**, Plaintiff demands judgment against the Defendants Johnson, O'Reilly, Tatum, and other unnamed Escambia County Deputy Sheriffs for compensatory damages together with interest plus attorney's fees and costs and further demands judgment against Johnson, O'Reilly and Tatum for punitive damages, together with attorney's fees plus the costs of this action and such other relief as the court deems just and equitable.

### Count VI
(Battery – State Law Claim)

76.   The Plaintiff incorporates paragraphs one through thirty-eight (1-38) above.

77.   The Plaintiff did suffer a harmful and offensive contact by the Defendants Johnson, O'Reilly, Tatum and other unnamed Escambia County Deputy Sheriffs in that he was tasered, beaten, bitten by a police K-9, detained, arrested, handcuffed, and made to lie

on the ground in his own urine without his consent in front of the business where he had been conducting a lawful investigation as a Special Agent and sworn law enforcement officer.

78. The offensive contact was committed by the Defendants Johnson, O'Reilly, Tatum and other unnamed Escambia County Deputy Sheriffs who intended that such offensive contact occur to the Plaintiff.

79. As a result of the Defendant's actions committed against him, the Plaintiff has suffered physical and emotional injuries to include embarrassment, humiliation, fear, anxiety and damage to his reputation.

**WHEREFORE**, Plaintiff demands judgment against the Defendants Johnson, O'Reilly and Tatum, for compensatory damages together with interest plus attorney's fees and costs and further demands judgment against Johnson, O'Reilly and Tatum for punitive damages, together with attorney's fees plus the costs of this action and such other relief as the court deems just and equitable.

## JURY DEMAND

The Plaintiff demands a jury trial on all such issues triable before a jury.

## **SUBSEQUENT AMENDMENT**

The Plaintiff moves this Honorable court to allow amendment of this complaint to add additional Defendants and counts as discovery is accomplished.

Done this 16th day of March, 2010 in Crestview, Okaloosa County, Florida.

Respectfully submitted,

_/s/ James R. Murray_____

James R. Murray
James R. Murray, P.A.
420 East Pine Avenue
Crestview, FL 32539
850 682-6165
Fla. Bar No: 0299162
Attorneys for the Plaintiffs

Eric D. Stevenson
David Lee Sellers, P.A.
919 North 12th Avenue
Pensacola, FL 32501
850 434-3111
Fla. Bar No: 144495
Attorneys for the Plaintiffs