IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**IRA LEE MCQUEEN,**

    Plaintiff,

v.                                                       Case No.: 3:10cv85/MCR/MD

**DAVID MORGAN, Sheriff of Escambia
County, Florida; DEPUTY SGT. SHEDRICK
JOHNSON, DEPUTY SHERIFF MICKEY
A. O'REILLY, JR., and DEPUTY SHERIFF
JIMMIE TATUM, and other yet to be identified
Escambia County Deputy Sheriffs,**

    Defendants.
_____/

## O R D E R

Plaintiff Ira Lee McQueen has filed a Complaint (doc. 1) pursuant to 42 U.S.C. § 1983 and state law naming as defendants Escambia County Sheriff David Morgan ("Morgan"), Escambia County Deputy Sargent Shedrick Johnson ("Johnson"), Escambia County Deputy Sheriff Mickey A. O'Reilly, Jr. ("O'Reilly"), Escambia County Deputy Sheriff Jimmie Tatum ("Tatum"), and other as-yet unnamed Escambia County deputy sheriffs (collectively "Defendants").[1] Pending before the court is Defendants' Motion for Bifurcation of Discovery, for Separate Trials and for Abatement of Discovery as to Official Capacity Claims (doc. 29). Plaintiff has responded in opposition (doc. 30), and Defendants have replied by filing two Notices of Supplemental Authority (docs. 33 and 34).[2] For the reasons stated below, the court grants Defendants' motion.

---

[1] The plaintiff names Morgan in his official capacity and Johnson, O'Reilly, and Tatum in both their official and individual capacities.

[2] In their Notices of Supplemental Authority, Defendants cite three cases pending before this court in which the undersigned referred to the magistrate judge for disposition nearly identical motions to bifurcate. The court agrees with the analyses and conclusions reached in each of those orders.

According to the Complaint, Plaintiff is a Special Agent for the State of Florida Division of Alcohol Beverage and Tobacco. While working undercover on October 28, 2008, Plaintiff entered a liquor store, questioned the sales clerk on duty in connection with a possible sale to a minor, and retrieved a firearm from the sales clerk who admitted to being armed. A customer who was in the store at the time of the confrontation observed Plaintiff with the firearm and contacted 911 to report the incident. The 911 operator relayed the call to the Escambia County Sheriff's Office ("Sheriff's Office"). The customer informed the Sheriff's Office that a person, who might be a friend of the sales clerk, was inside the business with a firearm and that the customer was not sure what, if anything, was going on inside the business. The Sheriff's Office dispatched units to the business on a possible robbery in progress. More than fifteen deputies responded to the call. Despite attempts to identify himself – both to the Sheriff's Office, which he had contacted by phone upon observing the arrival of the deputies, and to the deputies who arrived on the scene – Plaintiff was detained. Plaintiff alleges that, during his detention, he repeatedly was shocked with a Taser stun gun, attacked by a police canine ("K-9"), and had his head slammed into the concrete sidewalk on which he was lying while in handcuffs. Once Plaintiff successfully identified himself, he was released by the deputies and transported to a hospital for treatment of the injuries he allegedly sustained. In his Complaint, Plaintiff asserts six causes of action in connection with the October 28, 2008, incident. In Count I, Plaintiff asserts a Fourth Amendment claim against Johnson, O'Reilly, and Tatum for excessive force as a result of their use of a Taser stun gun and deployment of a K-9. In Counts II, III, and IV, Plaintiff asserts claims against Morgan in his official capacity regarding policies and procedures pertaining to the deployment of K-9s, use of Taser stun guns, and recognition of undercover and off duty law enforcement officers.[3] Counts V and VI are state law claims against Johnson, O'Reilly, and Tatum for false imprisonment and battery, respectively.

---

[3] Plaintiff additionally asserts that Morgan failed to train offers to recognize undercover and off duty law enforcement officers.

Case No.: 3:10cv85/MCR/MD

Pursuant to Federal Rules of Civil Procedure 26 and 42(b), Defendants move to bifurcate the discovery and trials of the claims against Johnson, O'Reilly, and Tatum from the official capacity claims against Morgan; they also seek abatement of discovery as to the official capacity claims. Defendants argue, based on Plaintiff's initial requests, that discovery related to the official capacity claims will be extensive and involve "an analysis of other uses of force, and uses of K-9 dogs and taser devices over at least a five year period of time" by both these individually sued Defendants and other deputy sheriffs. Defendants indicate that responding to Plaintiff's discovery requests has already proved burdensome, pointing to the hundreds of pages of reports they have already provided. They further submit that each instance involving the use of force, use of a K-9, or use of a Taser stun gun will involve numerous persons and, possibly, levels of administrative review; if issues related to policy, supervision, and training with respect to each separate incident must also be addressed in discovery, significant additional time and expense inevitably will be required. According to Defendants, bifurcation of discovery and trial will avoid prejudice at trial to the individually named Defendants, provide for convenience and expediency through a shortened discovery and trial period, and reduce the time and expense for investigation and discovery of claims that may not ultimately need to be tried.

Plaintiff opposes the motion in its entirety. With regard to discovery issues, Plaintiff argues that Defendants make only speculative and conclusory assertions regarding the nature of the discovery sought on the official capacity claims and fail to cite any of the reasons authorized in Rule 26 for abating such discovery. Plaintiff further asserts that discovery related to the official capacity claims may identify admissible evidence relevant to the individual capacity claims. Plaintiff states that the cases on which Defendants rely in support of their motion – none of which are from the Eleventh Circuit – involve agencies far larger than the Escambia County Sheriff's Office and that Defendants have thus failed to show that discovery on the official capacity claims would be unduly burdensome or expensive. With regard to trial severance, Plaintiff contends that any potential prejudice could be cured through the use of appropriate jury instructions. Moreover, Plaintiff asserts,

all of the claims in this case are based on the core allegation of the use of excessive force, making them rationally related to each other and thus properly tried together.

A county sheriff, such as Morgan in this case, may be subject to § 1983 liability in his official capacity with respect to claims that a custom, practice, or policy of the municipality he represents violates the constitution. *See Hutton v. Strickland*, 919 F.2d 1531, 1542 (11th Cir. 1990); *see also McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 n.2 (1997) (when the defendant is the county sheriff, the suit is effectively an action against the governmental entity he represents). There is no respondeat superior liability for a municipality for the wrongful actions of its law enforcement officers; the municipality may only be held liable when municipal official policy causes a constitutional violation. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 692 (1978). To impose § 1983 liability on a municipality, a plaintiff must show: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citation omitted). In establishing a claim of failure to train or supervise, a plaintiff is held to a high standard in showing the connection between the training or supervision and the injury suffered. A plaintiff is required to "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Board of the Cnty. Comm'rs. of Bryan Cnty., Ok. v. Brown*, 520 U.S. 397, 403 (1997). Moreover, "the identified deficiency in a city's training program must be closely related to the ultimate injury . . . [the plaintiff] must still prove that the deficiency in training actually caused [the plaintiff's injury]." *City of Canton v. Harris*, 489 U.S. 378, 391 (1989). This high standard is necessary because "a lesser standard of fault would result in de facto respondeat superior liability on municipalities – a result [the Supreme Court] rejected in *Monell*." *Id.* at 392. Indeed, the mere fact that a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee permits no inference of municipal culpability and causation. *See McDowell*, 392 F.3d at 1289 (citation omitted).

Under the Federal Rules of Civil Procedure, a party is permitted to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."

Fed. R. Civ. P. 26(b)(1). The information sought does not need to be admissible at trial "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Rule 26 also provides, however, that discovery should be limited when, among other things, "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). Rule 42(b) of the Federal Rules of Civil Procedure permits a court to order a separate trial of any claim or issue. In deciding whether to bifurcate a trial, a court should consider the convenience of bifurcation, judicial economy, and the risk of prejudice. *See Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1324-25 (11th Cir. 2000), *overruled on other grounds*, *Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003). The burden rests with the moving party to show that bifurcation is necessary, *see* 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3d § 2388 at 124-25 & n. 23 (collecting cases) (2008), with the decision to bifurcate committed to the court's sound discretion. *Harrington v. Cleburne Cnty. Bd. of Educ.*, 251 F.3d 935, 938 (11th Cir. 2001) (Rule 42(b) "confers broad discretion on the district court in this area, permitting bifurcation merely 'in furtherance of convenience.' This is not a high standard. . . .").

A *Monell* claim may be a good candidate for bifurcation because no trial of the municipality is necessary if the individual government employees are found not to be liable. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (*per curiam*). Also, bifurcation permits the court to isolate evidence regarding municipal policies and customs (for example, prior incidents of excessive force and the policymaker's response) which would be relevant to a *Monell* analysis but could be prejudicial to the individual employees. *See Dawson v. Prince George's Cnty.*, 896 F. Supp. 537, 539 (D. Md. 1995). Accordingly, courts may sever *Monell* claims against a municipality from claims against individual police officers, *see Wilson v. Morgan*, 477 F.3d 326, 339 (6th Cir. 2007); *Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000); *Ojeda-Beltran v. Lucio*, 2008 WL 2782815 (N.D. Ill. 2008), and stay litigation of the *Monell* claims until the rest of the case has been resolved.

*See, e.g. Cole v. Prince George's Cnty.*, 2010 WL 3169843 (D. Md. 2010); *Nash v. Cnty. of Will*, 2008 WL 4951245 (N.D. Ill. 2008); *but see, e.g., Terry v. Cook Cnty. Dept. of Corrections*, 2010 WL 2720754 (N.D. Ill. 2010) (denying motion to bifurcate and stay *Monell* discovery); *Miller v. City of Plymouth*, 2010 WL 1754028 (N.D. Ind. 2010) (denying motion to bifurcate discovery).

In this case, the court concludes that allowing discovery into the *Monell* claims against Morgan likely would be a burdensome and expensive process for Escambia County, a process that may very well be needless in the event there is a finding of no liability against Johnson, O'Reilly, Tatum, and the other deputies with respect to the individual capacity claims. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii). Furthermore, severance of Counts II, III, and IV from the other counts would eliminate the potential for prejudice at trial to the individual capacity Defendants from the introduction of evidence of prior wrongful acts by other officers. Such evidence carries not only a substantial risk that a jury will be inflamed by hearing about the other wrongful acts and thus more likely to conclude that the individual Defendants committed the wrongful acts alleged in this case, but also the risk of a confusing and protracted trial on these other incidents. *See* Fed. R. Civ. P. 42(b). Thus, Counts II, III, and IV of the Complaint shall be severed from the remaining Counts for discovery and trial purposes, and discovery as to Counts II, III, and IV shall be stayed.

Accordingly, it is **ORDERED**:

1. Defendants' Motion for Bifurcation of Discovery, for Separate Trials and for Abatement of Discovery as to Official Capacity Claims (doc. 29) is **GRANTED**. Counts II, III, and IV of the Complaint, Plaintiff's official capacity claims against Morgan, are severed from Counts I, V, and VI for purposes of discovery and trial.

2. Discovery as to Counts II, III, and IV is **STAYED**.

**DONE AND ORDERED** this 4th day of November, 2010.

                                            s/ *M. Casey Rodgers*
                                            **M. CASEY RODGERS**
                                            **UNITED STATES DISTRICT JUDGE**