IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

IRA LEE MCQUEEN,

    Plaintiff,

v.                                                            Case No. 3:10cv85MCR/EMT

DAVID MORGAN, Sheriff of Escambia
County, Florida, DEPUTY SGT. SHEDRICK
JOHNSON, DEPUTY SHERIFF MICKEY
A. O'REILLY, Jr., DEPUTY SHERIFF
JIMMIE TATUM,

    Defendants.
_____/

## ORDER

The plaintiff, Ira Lee McQueen, filed this lawsuit under 42 U.S.C. § 1983 against David Morgan, Sheriff of Escambia County, Florida ("Sheriff"), in his official capacity, and Deputy Sergeant Shedrick Johnson ("Johnson"), Deputy Sheriff Mickey A. O'Reilly, Jr. ("O'Reilly"), and Deputy Sheriff Jimmie Tatum ("Tatum"), in their individual and official capacities, alleging that the deputy defendants used excessive force against him in the course of an arrest in violation of his constitutional rights.[1]  Pending before the court are two motions for summary judgment – one filed by Tatum (doc. 43) and the other filed by Johnson and O'Reilly (doc. 44).[2]  Having considered the motions and responses, the court finds that Tatum's motion should denied and that the motion filed by Johnson and O'Reilly should be granted in part and denied in part.

---

[1] The plaintiff also asserted a state law claim of battery against Johnson, O'Reilly, and Tatum.

[2] The court granted the defendants' motion to bifurcate discovery, for separate trials, and for abatement of discovery as to the plaintiff's claims against the Sheriff in his official capacity.  See doc. 35.

Case No. 3:10cv85/MCR/EMT

**BACKGROUND**[3]

The plaintiff is a Special Agent with the State of Florida, Department of Business and Professional Regulation, Division of Alcoholic Beverages and Tobacco.[4] On October 28, 2008, the plaintiff was working undercover at a liquor store with Special Agent Tammy Richards ("Richards"), investigating the sale of alcoholic beverages to minors. After Richards informed the plaintiff that such a sale had occurred, the plaintiff entered the business, identified himself, explained the infraction to the sales clerk, and asked the clerk if he was armed. The sales clerk responded that he was, and the plaintiff proceeded to retrieve a handgun from him.[5] As he was doing so, a customer who had previously entered the business observed the plaintiff holding the handgun and the sales clerk standing with his hands on his head. The customer left the store and called 911 to report the incident. Specifically, the customer informed the dispatcher that a person, whom she initially believed to be a friend of the sales clerk, was inside the store with a handgun and that she was not sure what, if anything, was occurring; she also gave a description of the plaintiff. In response to the customer's call, the dispatcher reported a possible armed robbery to the Escambia County Sheriff's Office ("ECSO").

Unaware that the customer had contacted law enforcement, the plaintiff called the ECSO to run a check on the sales clerk; he was transferred to the records department and placed on hold. While the plaintiff was on hold, approximately ten to fifteen deputies arrived on the scene. The plaintiff observed the deputies while he was still in the store and on the phone with the dispatcher. The plaintiff was aware that the deputies were yelling at him, but claims that he could neither hear nor decipher their commands from inside the

---

[3] In deciding a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The court therefore does so here, drawing those facts from the pleadings, depositions, and other evidentiary materials on file.

[4] At the time of the events in question, the plaintiff had been employed by the ABT for approximately twenty-five years.

[5] After retrieving the weapon, the plaintiff placed it in the right pocket of his jacket.

Case No. 3:10cv85/MCR/EMT

store.[6] Fearing that the deputies would begin shooting at him, the plaintiff kept his hands in view and moved toward the door while attempting to identify himself by yelling "state police."[7] As the plaintiff exited the store, he continued yelling "state police;" at the same time, the deputies demanded that he "show his hands," "put down the phone," and "get on the ground." The plaintiff began to go down on his knees almost immediately after exiting the store; as he did so, Johnson, who had observed the plaintiff's service weapon, which was secured in a holster on his right hip, shot the plaintiff with a taser,[8] causing him to collapse on the ground.[9] Once the plaintiff hit the ground, Johnson tased him again, causing the plaintiff's bladder to release, and then four or five deputies jumped on top of him.[10] While the deputies were on top of the plaintiff, Tatum observed the plaintiff's service weapon and yelled "gun." O'Reilly then tased the plaintiff two more times and Tatum

---

[6] Richards, however, was able to understand the deputies' commands, as she testified in her deposition that the deputies told them to "get down" and that she and the sales clerk complied with their commands. A video recording from a camera inside the store confirms that fact.

[7] At this point, at least some of the deputies had observed the gun in the plaintiff's pocket and most of them had their weapons drawn.

[8] According to the Eleventh Circuit,

> [a] "taser" is a non-deadly weapon commonly carried by law enforcement. The taser administers an electric shock to a suspect by shooting two small probes into the suspect's body. The probes are connected to the firing mechanism via wires. Once fired, the probes lodge under the suspect's skin and administer an electric shock. This type of taser permits the officer to incapacitate a suspect from a modest distance.

*Fils v. City of Aventura*, 647 F.3d 1272, 1276 n.2 (11th Cir. 2011).

[9] Johnson claims that the plaintiff was not compliant with the deputies' commands before being tased. He also testified that he tased the plaintiff only after he observed that the plaintiff was in possession of two weapons and witnessed the plaintiff's hands move in a direction that could have been construed as reaching for one of the weapons. Similarly, Deputy Sergeant Richard Bailey testified in his deposition that he observed one of the plaintiff's arms move in a downward direction when the plaintiff was going to his knees, and an underage person working undercover with the plaintiff testified that she observed a similar movement. A video taken by a bystander's on her cell phone reveals that, upon exiting the store, the plaintiff's right hand was grasping a cell phone and holding it to his ear, but the location of his left arm is not apparent.

[10] Although the plaintiff testified in his deposition that his hands were out in front of him, he acknowledged in his response to the defendants' motion that he fell to the ground with his hands beneath him. Johnson testified that he tased the plaintiff again after he fell to the ground because he noticed the plaintiff moving his hands.

Case No. 3:10cv85/MCR/EMT

released his K-9, which the plaintiff claims attacked him for ten to fifteen seconds while the deputies remained on top of him, biting him between four and seven times.[11] The plaintiff maintains that he was incapacitated after the initial tasing and unable to comply with the deputies' commands. Once the plaintiff was restrained in handcuffs, one of the deputies retrieved his identification from his pocket and discovered that he was a law enforcement officer. The plaintiff claims that the deputies nevertheless failed to immediately release him and left him lying on the ground in his urine with his hands handcuffed behind his back. When he ultimately was released, the plaintiff was transported to Sacred Heart Hospital for treatment of the injuries he received during the incident.

## DISCUSSION

A.  Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56(a) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party. *Id.* Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence

---

[11] The number of times the plaintiff was tased and the sequence in which the tasing occurred are in dispute. In his response to the defendants' motion, the plaintiff contends that he was tased at least four times (twice by Johnson and twice by O'Reilly). The defendants, on the other hand, insist that the plaintiff was tased only three times (twice by Johnson and once by O'Reilly). In his deposition, the plaintiff testified to three tasings – one as he was going to his knees, one as he was about to hit the ground, and another after he hit the ground.

could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995). As stated, when assessing the sufficiency of the evidence, the court must view all the evidence, and all factual inferences reasonably drawn therefrom, in the light most favorable to the nonmoving party. *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993). Whenever the nonmoving party has presented "sufficient, competent evidence . . . to support [his] version of the disputed facts," the court will resolve disputes in his favor. *Pace v. Copobianco*, 283 F.3d 1275, 1276 (11th Cir. 2002). A mere scintilla of evidence in support of the nonmoving party's position, however, will not suffice to demonstrate a genuine issue of material fact and thereby preclude summary judgment. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

B.   Excessive Force

According to 42 U.S.C. § 1983,

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In this case, the plaintiff claims that the deputies violated his Fourth Amendment right to be free from unreasonable seizure when they repeatedly tased him and released a K-9, all while he either was attempting to comply with their commands or was incapacitated.[12] The Eleventh Circuit has recognized that, in making an arrest, law enforcement officers are allowed to use whatever force is "necessary in the situation at hand." *Fils*, 647 F.3d at 1288 (internal marks omitted). An officer's use of force will be considered excessive, however, if it was "'objectively [un]reasonable in light of the facts and circumstances

---

[12] Where an excessive force claim "arises out of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Graham v. Connor*, 490 U.S. 386, 395 (1989).

Case No. 3:10cv85/MCR/EMT

confronting' the officer." *Id.* at 1287 (quoting *Graham*, 490 U.S. at 397). "Reasonableness is 'judged from the perspective of the reasonable officer on the scene' without the benefit of hindsight." *Id.* (quoting *Graham*, 490 U.S. at 396). "This standard 'allow[s] for the fact that police officers are often forced to make split-second judgment – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.'" *Id.* (quoting *Graham*, 490 U.S. at 396-97). When deciding a motion for summary judgment, the court "cannot simply accept the officer's subjective version of events, but rather must reconstruct the event in the light most favorable to the non-moving party, and determine whether the officer's use of force was excessive under those circumstances." *Id.* at 1288. "When determining whether the force used to make an arrest was reasonable for purposes of the Fourth Amendment, [the] court must carefully balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests." *Id.* (internal marks omitted). The court does so by considering (1) the severity of the crime of which the individual is suspected; (2) whether the individual posed an immediate threat to the safety of the officers or others; and (3) whether the individual actively resisted arrest or attempted to flee. *Id.*

Viewed in the light most favorable to the plaintiff, the undisputed facts of this case demonstrate that the plaintiff was suspected of a serious crime and did not comply with the deputies' commands while inside the store. Although there was no indication that the plaintiff had threatened or harmed anyone at the time he exited the store, considering that Richards and the sales clerk complied with the deputies' commands, no jury could reasonably find other than that the deputies reasonably believed the plaintiff heard their commands but was resisting arrest in failing to comply with them as he exited the store. The court therefore finds that the first tasing was reasonable under the circumstances as a matter of law.[13]

---

[13] Johnson has asserted the defense of qualified immunity. Because the court has found the first tasing incident reasonable under the circumstances, the court need not consider whether Johnson is entitled to qualified immunity for his actions in that regard. *See Fils*, 647 F.3d at 1287 (noting that the first element of a qualified immunity defense is the violation of a constitutional right).

Case No. 3:10cv85/MCR/EMT

The plaintiff further claims that he was incapacitated by the initial tasing and thereafter unable to comply with the deputies' commands.  According to the Eleventh Circuit, "unprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights under the Fourth Amendment." *Id.* at 1289.  In other words, although the use of tasers and other weapons may be appropriate where an officer reasonably believes the suspect is violent, hostile, belligerent, and/or uncooperative, tasing a suspect who is not violent, does not disobey orders or resist arrest, and poses no risk to the defendants or anyone else violates the suspect's Fourth Amendment Rights.  *Id.* at 1289-90; *see Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) (noting that the right of a non-resisting arrestee to be free from the gratuitous use of force is well established in the Eleventh Circuit); *Danley v. Allen*, 540 F.3d 1298, 1309 (11th Cir. 2008) (holding that "[w]hen [officers] continue to use substantial force against [an arrestee] who has clearly stopped resisting – whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated – that use of force is excessive"); *Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002) (noting that, "[b]y 1998, [Eleventh Circuit] precedent clearly established that government officials may not use gratuitous force against a [suspect] who has been already subdued or . . . incapacitated"); *Priester v. City of Riviera Beach, Fla.,* 208 F.3d 919, 927 (11th Cir. 2000) (denying qualified immunity where officer released K-9 on suspected burglar who put his hands in the air and followed directions to drop to the ground).  Given the plaintiff's statement that he was incapacitated after the initial tasing and the absence of any evidence that the plaintiff was violent, resisting arrest, or disobeying commands, a jury reasonably could find that the use of any force after the initial tasing was excessive.  The court thus finds that summary judgment is appropriate as to the plaintiff's claim of excessive force against Johnson based on the initial tasing, but that a genuine issue of material fact exists as to the remainder of the plaintiff's claims of excessive force.

C.   Qualified Immunity

In addition to arguing that they did not use excessive force against the plaintiff, the defendants maintain that they are entitled to summary judgment based on qualified

immunity. According to the Eleventh Circuit, a claim of qualified immunity is to be analyzed under a two-part test. First, the court must determine whether the plaintiff has offered sufficient evidence to establish a constitutional violation. *Fils*, 647 F.3d at 1287 (citing *Saucier v. Katz*, 533 U.S. 194, 200-02 (2001)). In the event he has, the court must determine whether the constitutional right was clearly established at the time of the alleged violation "such that a reasonable officer should have known that his conduct violated the plaintiff's constitutional rights."[14] *Id.* For the reasons set forth above, the court has determined that the plaintiff has demonstrated a violation of his right to be free from the use of excessive force after the initial tasing; the plaintiff, therefore, has satisfied the first prong of the test with regard to each incident in which force was used after that point. As for the second prong, the Eleventh Circuit has held that, to deny qualified immunity, the law in effect at the time "must have been sufficiently clear to put [the defendants] on notice that their conduct violated [the plaintiff's] Fourth Amendment rights." *Id.* at 1291. A defendant is on notice that his conduct is unconstitutional if the relevant case law at the time of the alleged violation would have made it clear to a reasonable officer that the amount of force used was excessive. *Id.* It is not necessary that the case law demonstrate factual circumstances "'materially similar'" to the officer's conduct; rather, an officer may be put on notice that his conduct is unconstitutional even in "'novel factual circumstances.'" *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). A defendant also is on notice that his conduct is unconstitutional if the conduct "lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to [the officer], notwithstanding the lack of fact-specific case law." *Id.* (internal marks omitted). "This method—termed 'obvious clarity'—is a narrow exception to the normal rule that only case law and specific factual scenarios can clearly establish a violation" and applies where the officer's conduct is so outrageous that it clearly goes beyond the border between excessive and acceptable force. *Id.* at 1291-92 (internal marks omitted). The

---

[14] The Eleventh Circuit has emphasized that the two steps do not have to be analyzed sequentially and that, if the law was not clearly established, the court need not decide whether the defendants violated the plaintiff's constitutional rights. *See id.*

Case No. 3:10cv85/MCR/EMT

court finds that a genuine issue of material facts exists as to whether the defendants should have known, based on existing law, that their use of force against the plaintiff after the initial tasing – when the plaintiff was incapacitated and not resisting arrest – violated the plaintiff's Fourth Amendment rights.  The court thus finds summary judgment inappropriate as to the defendants' claims of qualified immunity with respect to each incident of force after the initial tasing.  *See Williams v. Scott*, No. 10-12075, 2011 WL 2672534, at *4 (11th Cir. July 8, 2011) (affirming district court's denial of summary judgment based on qualified immunity where a genuine issue of material fact existed, noting that the trier of fact had to "decide whom to believe and what actually transpired").[15]

**CONCLUSION**

Accordingly, it is hereby ORDERED that Tatum's motion for summary judgment (doc. 43) is DENIED and that the motion for summary judgment filed by Johnson and O'Reilly (doc. 44) is GRANTED in part and DENIED in part.

DONE AND ORDERED this 30th day of September, 2011.

s/ *M. Casey Rodgers*
**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[15] If the facts at trial do not bear out the plaintiff's version of events and demonstrate that he, in fact, failed to comply with the officers' commands and was resisting arrest, the court will revisit the issue of qualified immunity upon motion of the defendants.

Case No. 3:10cv85/MCR/EMT